**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLOBUS MEDICAL, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** _____ |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **DAN POWELL,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Through undersigned counsel, Plaintiff, Globus Medical, Inc. ("Globus"), files this Complaint against Defendant, Dan Powell, which seeks Preliminary and Permanent Injunctive Relief and Damages, and states:

## INTRODUCTION

1. This matter seeks legal and equitable remedies against Defendant for his failure to return Globus' property, some of which contains its confidential and proprietary information, after voluntarily resigning from Globus on November 21, 2025, and taking a job with its smaller, but direct competitor, Alphatec Spine, Inc. ("Alphatec"), on November 24, 2025. To be clear, Defendant cannot dispute that:

   A. he downloaded numerous documents from Globus' cloud-based computer network (the "Downloaded Files") during the days, weeks, and months leading up to his resignation;

   B. certain of those Downloaded Files contain Globus' confidential and proprietary materials;

   C. he utilized at least one unauthorized email address to conduct Globus business; and

   D. he refuses to allow an independent third-party to forensically examine the device(s) he used to access and save the Downloaded Files and the other personal electronic devices and email accounts he utilized for his Globus work.

2.      Globus first demanded that Defendant search his electronic devices and return the Downloaded Files via November 28, 2025 letters from its General Counsel to Alphatec's General Counsel and Defendant, which are attached as **Exhibit 1**.  Following an extensive exchange of correspondence, Defendant – through Alphatec's in-house counsel – has refused to forensically image his electronic devices and return the Downloaded Files.

## THE PARTIES

3.      Globus is a musculoskeletal technology and medical device company dedicated to solving unmet clinical needs and changing lives.  It is a Delaware corporation that maintains its principal place of business within this judicial district.  Globus is a citizen of Delaware and Pennsylvania for purposes of diversity jurisdiction.

4.      Defendant resides in Colorado.  Globus employed Defendant from November 2018 through November 21, 2025, most recently as an Area Vice President in Globus' Imaging, Navigation, and Robotics (commonly referred to as "Capital Equipment") division.[1]  Defendant now serves as Alphatec's Vice President of U.S. Sales, EOS Capital.

## JURISDICTION, VENUE, AND APPLICABLE LAW

5.      Jurisdiction is proper under 28 U.S.C. Section 1332 because the parties are completely diverse and the amount in controversy, including the value of the requested injunctive relief, exceeds $75,000.00, exclusive of interest, cost, and fees.

6.      Venue is proper in this Court pursuant to 28 U.S.C. Section 1391 because: (i) Globus executed the contract that is the subject of this dispute in Pennsylvania, and Defendant signed and returned the contract to Globus in Pennsylvania; and (ii) Section 6.5 of the November 15, 2018, No Competition and Non-Disclosure Agreement between Globus and Defendant (the

---

[1] Globus colloquially refers to its Imaging, Navigation, and Robotics division as "INR."

"NCNDA"), which is attached as **Exhibit 2,** contains an enforceable exclusive venue clause that requires the parties to resolve their disputes in this judicial district.

7.    Pennsylvania law governs this breach of contract case pursuant to Section 6.5 of the NCNDA.

## RELEVANT FACTS

8.    Globus is a leader in the medical device industry with products that treat spinal and orthopedic diseases.  Part of its success derives from its robust portfolio of implants, instruments, and Capital Equipment.  Indeed, providing its sales force with top-of-the-market products and protecting its confidential and proprietary information about those products allows those individuals to develop deep relationships with Globus' customers, which include surgeons, hospitals, and other medical facilities.

9.    To help protect the secrecy of its confidential and proprietary information, Globus requires its employees to sign agreements that require them to, without limitation: (i) return all of Globus' property at the time their Globus employment terminates; and (ii) maintain the secrecy of Globus' confidential and proprietary information.  Here, the NCNDA imposed these and other obligations on Defendant.

10.    Section 2.2 of the NCNDA defines "Confidential Information" as:

… all information not generally known to the public, in spoken, printed, electronic, or any other form, relating directly or indirectly to: research and development activities, data, results, technology, business or financial information, know-how, trade secrets, practices, techniques, methods, strategies, processes, inventions, developments, specifications, formulations, formulae, materials or compositions of matter of any type or kind (patentable or otherwise), software, algorithms, marketing reports, expertise, technology, test data (including clinical, biological, biomechanical, chemical, and biochemical) and other study data and procedures, drawings, product designs, performance, prototypes and technical specifications, pricing, forecasting, bidding and costing policies, sales, operating, recruitment, training and marketing strategies and techniques, compensation, strategic partners, customer, potential customer, distributor and supplier information, nonpublic

financial information of the Company, or information belonging to third parties that has been disclosed to Company under an obligation of confidentiality.

11.     As to Defendant's obligation to protect the secrecy of Globus' Confidential Information, Section 4.1 of the NCNDA provides:

[B]oth during the Relationship and after the termination of the Agreement, I will not for any reason whatsoever (other than to promote and advance the business of the Company), reveal to any person or entity (both commercial and non-commercial) any Confidential Information of the Company.

Likewise, Section 4.5 of the NCNDA states that Defendant:

…shall not physically or electronically remove or make copies of any Confidential Information owned by the Company, except as required by me to properly fulfill my responsibilities to, and permitted by, the Company. Upon the termination of the Relationship, [Defendant] shall immediately return to the Company any and all Company property and Confidential Information in my possession, including any and all copies of Company property and Confidential Information.

12.     Section 4.6 of the NCNDA imposes certain fiduciary obligations on Defendant to protect Globus' Confidential Information.  It provides:

I agree that I shall treat all Confidential Information entrusted to me by the Company as a fiduciary, and I accept and undertake all the obligations of a fiduciary, including good faith, loyalty, trust, confidence and candor, and to maintain, protect and develop Confidential Information for the benefit of the Company.

13.     Without limitation, Section 5.1 of the NCNDA contains Defendant's acknowledgement that Globus shall be entitled to an injunction to enforce the provisions of the NCNDA.  It states:

The Company and the Individual recognize and acknowledge that the limitations set forth in this NCND Agreement are properly required for the adequate protection of the business of the Company, and that violation of any of the provisions of this NCND Agreement will cause irreparable injury for which money damages are neither adequate nor ascertainable. Accordingly, the Company shall have the right to have the provisions of this NCND Agreement specifically enforced, in addition to any other remedies which the Company may have in equity or at law, and the Individual hereby consents to the entry of an injunction or other similar relief without the necessity of posting a bond or other financial insurance. Furthermore,

4

the Company shall be entitled to recover its costs and expenses (including reasonable attorneys' fees) incurred in enforcing its rights under this NCND Agreement.

If a dispute arises under this NCND Agreement, the Individual shall have a duty to immediately notify the Company of the name, address and telephone number of the Individual's legal counsel. In the event the Individual fails to provide this information, the Individual agrees that the Company may seek a temporary restraining order to enforce the provisions of this NCND Agreement on an ex parte basis. The Individual acknowledges that the Company's recovery of damages will not be an adequate means to redress a breach of this NCND Agreement. Nothing contained in this paragraph, however, shall prohibit the Company from pursuing any remedies in addition to injunctive relief, including recovery of damages.

14. Section 5.2 of the NCNDA articulates at least some situations, such as here, where Globus is entitled to recover attorneys' fees from Defendant. It provides:

If the Company seeks a restraining order, an injunction or any other form of equitable relief, and recovers any such relief, the Company shall be entitled to recover its reasonable attorneys' fees, court costs, and other costs incurred obtaining that relief (even if other relief sought is denied). If the Company obtains a final judgment of a court of competent jurisdiction, pursuant to which the Individual is determined to have breached his/her obligations under this Agreement, the Company shall be entitled to recover, in addition to any award of damages, its reasonable attorneys' fees, costs, and expenses incurred by the Company in obtaining such judgment. The parties agree that the provisions of this paragraph are reasonable and necessary.

15. Section 6.1 of the NCNDA is titled "Condition to Seeking Subsequent Employment." It provides:

To assist Globus with monitoring compliance with this NCND Agreement, [Defendant] agree[s], during the No Competition Period, to notify Globus in writing prior to commencing employment with a Competing Company of the identity of the Competing Company and [Defendant's] job title and responsibilities. [Defendant] algo agree[s] to show a copy of this NCND Agreement to any Competing Company with whom I interview during the Relationship or with whom I interview within the 12-month period immediately following the termination of the relationship.

16. Globus' INR division offers innovative and market-leading products, such as ExcelsiusGPS™ ("EGPS"), which is the world's first (and only) surgical navigation robot that

offers a comprehensive approach to both spine and cranial procedures, from start to finish.[2] Additionally, Excelsius3D™ ("E3D") is Globus' intelligent imaging system, which offers x-ray, fluoroscopy, and 3D imaging all in one comprehensive – and mobile – system.[3]

17.    Until recently, Alphatec was not a player in the INR market as it had no viable offerings in the space. That changed with its recent acquisition and commercialization of its EOS Insight™ ("EOS") imaging platform and its Valence® Robotic Navigation System ("Valence"). Valence and EOS compete with EGPS and E3D.  Defendant now oversees US Sales for Alphatec's EOS Capital.

18.    In his role as an Area Vice President in Globus' INR division, Defendant reported directly to Globus' INR worldwide sales leader. A team consisting of a Zone Director and multiple Regional Sales Managers ("RSMs") reported to Defendant, and he was ultimately responsible for the marketing and sale of Globus' Capital Equipment (i.e., EGPS, E3D, etc.) for the western half of the United States. Defendant was also responsible for Globus's Capital Equipment business in Australia and the entirety of Latin America. As Area Vice President, it was Defendant's job to develop sales channels and negotiate purchase agreements by cultivating relationships with hospitals and medical centers, through regularly interacting with key physician champions of the technology and C-suite level representatives of these medical facilities as the purchase of Capital Equipment is a significant (and oftentimes ongoing) financial commitment.

19.    In May of 2025, six months before resigning from Globus, Defendant messaged members of Globus' informational technology ("IT") staff: "Hi Brent!  We are moving and I have

---

[2]  EGPS's revolutionary capabilities are detailed on Globus' website. Globus Medical, Inc., https://www.globusmedical.com/musculoskeletal-solutions/excelsiustechnology/excelsiusgps/ (last accessed April 2, 2026).

[3]  Detailed on Globus' website. Globus Medical, Inc., https://www.globusmedical.com/musculoskeletal-solutions/excelsiustechnology/excelsius3d/ (last accessed April 2, 2026).

few old laptops – I'll fedex them back, but who do I sent attn to?" At or around this time, Defendant returned the laptop computers Globus issued to him and, upon information and belief, began utilizing his personal devices to conduct business.

20. At all times relevant to this dispute, Globus' policies and procedures prohibited its employees from primarily utilizing their own devices for their Globus work without explicit permission. Defendant did not request such permission from his direct manager, Micah Schmitt, and upon information and belief, no one from Globus gave Powell this explicit permission.

21. Between September 1 and November 18, 2025, Defendant connected a personal electronic device to Globus' Microsoft 365 Exchange Online, which is part of a cloud-based productivity suite with office applications and collaboration tools, on multiple occasions to access and save the Downloaded Files to his personal device.

22. Without access to Defendant's personal device(s), Globus cannot state exactly what Defendant downloaded. That said, Globus can definitively determine that Defendant downloaded numerous files and the names of several of the Downloaded Files strongly indicate (if not conclusively prove) that they contain Globus' Confidential Information about its Capital Equipment business. Indeed, some of the Downloaded Files contained the following words and/or phrases:

- West Zone Pipeline 2025;
- RSM Vision Presentation;
- Microsoft Teams Chat Files;
- Excelsius Ecosystem _Vision Presentation;
- 2025 Ramsay Capital Proposal;
- Q3 PR RSM Dani Thayer;
- Excelsius Arrays and New Instruments Guide;
- ExcelsiusGPS E3D Pre-Installation Checklist
- Strategy/QCR Slides;
- CA-NV-HI Business Plan 2025_Hayes;
- CA-NV-HI Business Plan 2025 Ross;
- UCSD East Campus RPF;

- Pipeline;
- Hawaii Business Planning;
- California-Hawaii Business Planning 2025;
- 2024 California Planning;
- Jays Pipeline;
- 2023 Central Plan;
- Keith Pfeil Pipeline;
- Revenue Tracker;
- Finance Alignment;
- 2024 Nebraska Plan;
- Copy of Top Accounts; and
- CEO Proposal.

23.     The term "pipeline" appears in many of the Downloaded Files' file names, often in the context of various "pipeline trackers."  The importance of Globus' pipeline trackers cannot be overstated. Essentially, Globus tracks its entire worldwide INR business, from prospects all the way through completed sales, via pipeline trackers, which are Excel spreadsheets containing all the necessary information to solicit, market, and ultimately close sales of INR Capital Equipment including customer identity, product needs and specifications, status of sales process (i.e., target, prospect, sale in progress, sale completed), and any/all other actionable information regarding all customers within a particular geography.  Access to Globus' master INR pipeline tracker was limited solely to Defendant and four others during his tenure as Area Vice President. Put simply, Globus' pipeline trackers are some of its most secret and safeguarded Confidential Information, which are highly valuable to any competitor in the INR market.

24.     The term "plan" also appears in many of the Downloaded Files' file names.  As these file names also contain location descriptors, they contain sales strategies for its Capital Equipment in various regions and information specific to potential and actual Globus customers in those regions including, without limitation, sales volumes, potential product needs, etc., all of which qualify as Confidential Information.

25.    As detailed above, "Excelsius" is the name of Globus' entire ecosystem of exceptional technology designed to improve safety and care in the OR for patients and hospital staff alike including its robotics, imaging, extended reality, and navigation systems, which it developed over thirteen years of engineering and financial investment.  Several of the Downloaded Files contain the name "Excelsius."  Globus' confidential internal documents and materials related to training on and the marketing, competitive positioning, and sale of its Excelsius suite of products would be extremely useful to a company like Defendant's new employer that is launching any competitive INR platform. By way of example only, two of the Downloaded Files—which Defendant downloaded three days prior to resigning—are entitled "EGPS_vs_Velys_Handout 1.docx" and "ExcelsiusGPS E3D Pre-Installation Checklist.docx." The former document is internal market research compiled by Globus comparing the capabilities of its EGPS navigation system against a competitive system offered by Depuy Synthes, and the latter is Globus' step-by-step guide of actions to complete to ensure the efficient and seamless installation of Globus' EGPS and E3D platforms after a medical facility completes a purchase of Capital Equipment.

26.    Another file Defendant downloaded prior to his resignation is entitled, "ExcelsiusArrays and New Instruments Guide.pptx." This PowerPoint deck is an internal training tool that details all the newly released navigated instrumentation for use with, among other platforms, Globus' EGPS system and contains detailed pricing and product information.

27.    The value of these Downloaded Files to a competitor in the INR market is evident, and Globus has not identified a reason for Defendant to access the Downloaded Files for Globus' benefit between September 1, 2025, and November 18, 2025, prior to his resignation three days later.

28.     On November 21, 2025, a mere three days after Defendant downloaded the last of the Downloaded Files, Defendant resigned from his employment with Globus and informed it that he accepted a position with Alphatec's Capital Equipment division, focusing on its EOS imaging platform.  At the time he accepted this employment, Alphatec's Capital Equipment offerings were not as robust as Globus'.  However, Alphatec recently launched Valence, a robot navigation system that competes with Globus' EGPS robotic navigation system.

29.     On November 24, 2025, Defendant commenced his employment with Alphatec without having provided written notification to Globus of his job responsibilities as required by Section 6.1 of the NCNDA.

30.     In his new role as Alphatec's Vice President of US Sales, EOS Capital, Defendant leads all sales of Alphatec's imaging Capital Equipment, including EOS, to many of the same U.S.-based customers for whom he was responsible during his Globus tenure.

31.     Shortly after Defendant resigned his employment and commenced working for Alphatec, Globus discovered both Defendant's activity in accessing and downloading the Downloaded Files and his unauthorized use of personal devices to conduct his Globus business in (at least) the last six months of his employment.

32.     Globus also discovered that he utilized a personal, non-Globus email account to conduct business on its behalf. Defendant never asked permission to utilize a personal email address to conduct business. Indeed, Globus would not consent to such a request because, among other reasons, it has no way to ensure the proper safeguarding of its Confidential Information.

33.     Since that time, Globus made multiple demands to Defendant (directly and through Alphatec's in-house counsel who has stated she is representing him) for the return of its Confidential Information and for the ability to confirm their return/destruction via a neutral, third-

party forensic examination of Defendant's personal electronic devices(s) and email account(s) that he utilized to conduct Globus business. Defendant (directly and through Alphatec's in-house counsel) refused, and is refusing, Globus' demands, necessitating this litigation.

**COUNT I – Breach of Contract**

34.    Globus restates the allegations in paragraphs 1 through 33.

35.    The NCNDA is a valid and enforceable contract under Pennsylvania law.

36.    The Downloaded Files contain Globus' Confidential Information.

37.    Defendant's refusal to return the Downloaded Files violates Section 4.5 of the NCNDA.

38.    Globus is likely to prevail on this Breach of Contract claim as, at a minimum, there is no dispute that Defendant accessed and saved the Downloaded Files to his personal device(s) as he was preparing to move to Alphatec and is not complying with his contractual obligations to return Globus' property (including, without limitation, materials containing Globus' Confidential Information).

39.    Globus will suffer irreparable harm if an injunction does not issue as allowing Defendant to keep the Downloaded Files, including those that contain Confidential Information, will, in effect, place its Confidential Information about its Capital Equipment in the hands of a direct competitor that is attempting to compete with those products, including Globus' EGPS and E3D platforms.

40.    Requiring Defendant to return the Downloaded Files will not prejudice him as he is contractually obligated to do just that and has no right to the Downloaded Files.

11

41.    Requiring Defendant to return the Downloaded Files will benefit the public's interests in: (i) seeing valid contracts enforced under their plain terms and (ii) protecting an entity's personal property, especially when that property contains confidential and proprietary information.

42.    Pursuant to Section 5.2 of the NCNDA, Globus is entitled to recover the reasonable attorneys' fees and costs it incurs in this matter.

43.    Globus reserves the right to seek any monetary damages that Defendant's contractual breaches cause it to incur.

## COUNT II – Conversion

44.    Globus restates the allegations contained in paragraphs 1 through 43.

45.    Defendant possesses the Downloaded Files that belong to Globus and not Defendant.

46.    Defendant is depriving Globus of, and interfering with, its rights in and to the Downloaded Files, which is causing Globus to incur damages.

47.    Globus does not consent to Defendant possessing the Downloaded Files.

48.    Defendant has no lawful justification to continue his possession of the Downloaded Files.

## PRAYER FOR RELIEF

**WHEREFORE**, Globus respectfully requests that this Court:

A.    find in Globus' favor as to its cause of action against Defendant for breach of contract and award it monetary damages against Defendant in an amount to be determined at trial;

B.    issue preliminary and permanent injunctions that require Defendant to submit his personal electronic device(s) and email account(s) to third-party forensic examinations and from further violations of his confidentiality and return-of-materials obligations under the NCNDA;

C.       find in Globus' favor as to its cause of action against Defendant for conversion in an amount to be determined at trial;

D.       award Globus the reasonable costs, including attorneys' fees, it incurs in obtaining relief; and

E.       grant any other further and general relief it deems necessary, just, and proper.

Respectfully submitted,

BURNS WHITE LLC

*//s//* William J. Clements
William J. Clements
Pa. Atty. I.D. No. 86348
1001 Conshohocken State Road
Suite 1-515
West Conshohocken, PA  19428
(484) 567-5767 (Telephone)
(484) 567-5701 (Facsimile)
wjclements@burnswhite.com

Christopher W. Cardwell, Esq. (TN Bar #19751)
(*Pro Hac Vice Forthcoming*)
Mary Taylor Gallagher, Esq. (TN Bar #21482)
(*Pro Hac Vice Forthcoming*)
M. Thomas McFarland, Esq. (TN Bar #033432)
(*Pro Hac Vice Forthcoming*)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff, Globus Medical, Inc.*