# EXHIBIT 1



November 28, 2025

Tyson Marshall
General Counsel & Corporate Secretary
Alphatec Spine
1950 Camino Vida Roble
Carlsbad, California 92008
tmarshall@atecspine.com

**Via Email (tmarshall@atecspine.com)**

    **Re:    Dan Powell's Contractual Obligations to Globus**

Dear Mr. Marshall,

I write to make you aware of correspondence recently sent to Dan Powell (attached as **Exhibit 1**) regarding Globus's concerns that Mr. Powell's employment with Alphatec Spine interferes with his contractual obligations to Globus.

Globus presumes that Alphatec was unaware of Mr. Powell's obligations to Globus. Now that Alphatec is aware, however, Globus expects that Alphatec will take steps to ensure that Mr. Powell honors his obligations to Globus.

To that end, **by December 4, 2025**, please provide the following:

    i.    A description of Mr. Powell's current position, including title, scope of responsibilities, reporting structure, and the product areas with which he is involved;

    ii.    Confirmation as to whether Mr. Powell will have any responsibilities for selling or marketing (or managing or interacting with individuals responsible for selling or marketing) any Alphatec product besides EOS (and, if so, which specific products);

    iii.    A description of the guardrails Alphatec and Mr. Powell have installed to ensure that he will not sell or market (or manage or interact with individuals responsible for selling or marketing) any Alphatec product besides EOS;

*Life moves us*



    iv.     Written assurances that Alphatec has instructed and will continue to instruct Mr. Powell not to directly or indirectly use or disclose Globus's confidential information or trade secrets in his employment with Alphatec and instruct Mr. Powell to comply with all post-employment contained in his Agreement; and

    v.     Confirmation that Alphatec is abiding by the preservation expectation set forth below.

While Globus hopes and expects that Alphatec will provide the requested assurances and litigation will not be necessary, we expect that Alphatec will preserve all materials that are potentially relevant to this dispute, including, but not limited to, documents (e.g., notes, hard-copy papers, emails, text messages, spreadsheets, voicemails iMessages, chats, social media stories/posts/messages/activities, group chats), files, electronically stored information (including, but not limited to, emails, text messages, iMessages, social media posts/messages/activities, and group chats), devices, and websites concerning Globus; Globus's current and former employees; Globus's current and former customers, contractors, vendors, and partners; Globus's product portfolio (both in development and on the market); Alphatec's recruitment of Mr. Powell; and Mr. Powell's anticipated and actual job duties.  Any data function set to "autodelete" should be turned off immediately so that potentially relevant materials are not lost.

Although Globus fully anticipates that Alphatec will timely and satisfactorily reply to this letter, Globus continues to evaluate legal action and expressly reserves its right to pursue all legal and equitable claims and relief available to it.  We look forward to your response.

                    Sincerely,

                    Kelly Huller, Esq.
                    Executive Vice President,
                    General Counsel



# Exhibit 1



November 28, 2025

Dan Powell
6956 E. Nichols Avenue
Denver, Colorado 80112
dan@gritandarrow.com

**Via Email (dan@gritandarrow.com)**

    **Re:   Your Obligations to Globus**

Dear Dan,

I write concerning your recent announcement that you accepted and have started employment with Alphatec Spine, a direct competitor of Globus.

As you know, you and Globus are parties to the attached No Competition and Non-Disclosure Agreement ("NCNDA") (**Exhibit A**).  In the NCNDA, you agreed that during your relationship with Globus and for one year after it you would not "participate in, perform services for, be employed by, own any interest in, or otherwise assist a Competing Company[1] in connection with or relating to a Competing Product of Service" or "in a position similar in responsibilities to any position [you] held with the Company in the last twenty-four months prior to the termination of the Relationship or in a position where [you] could use Confidential Information to the detriment of Globus." **Ex. A**, NCNDA ¶ 3.1. You further agreed that "[b]oth during the Relationship and after the termination of the Agreement, [you] will not for any reason whatsoever . . . reveal to any person or entity (both commercial and non-commercial) any Confidential Information of the Company," subject to certain exceptions.  *Id.* ¶ 4.1.

---

[1] "Competing Company," means "any person, partnership, corporation, firm, limited liability company, association or other business entity, other than Globus, which currently or intends to manufacture, produce, design, research, develop, sell, market, distribute, or consult on a Competing Product or Service. . . . [or] any group purchasing organization, integrated delivery or health network, health system, hospital or medical center." **Ex. A**, NCNDA ¶ 2.5.  As discussed herein, Alphatec is a Competing Company.

*Life moves us*

You also agreed that, "to assist Globus with monitoring compliance with this NCND Agreement, . . . *prior to commencing employment* with a Competing Company," you would "notify Globus *in writing* . . . of the identity of the Competing Company and [your] job title *and responsibilities*." *Id.* ¶ 6.1 (emphases added).

On Friday, November 21, 2025, you resigned from Globus and informed us that you had already accepted a Vice President position with Alphatec. We understand that, as of November 24, 2025, you started employment with Alphatec.

Alphatec markets itself as "a medical device company dedicated to revolutionizing the approach to spine surgery through clinical distinction. . . . to better inform surgery and more safely and reproducibly achieve the goals of spine surgery." *Press Release: ATEC to Participate in Upcoming Conferences*, ATEC, https://investors.alphatecspine.com/press-releases/news-details/2025/ATEC-to-Participate-in-Upcoming-Conferences-d96ca354a/default.aspx (last accessed Nov. 25, 2025). Alphatec operates in the same competitive spine-surgery market as Globus by purporting to offer a full portfolio of spinal implant systems, procedures, and imaging tools. According to Alphatec, it recently further expanded its competitive footprint in the capital equipment market through its acquisitions of (i) EOS Imaging, which is "a data-informed, peri-operative platform that enables spino-pelvic alignment assessments, patient-specific surgical planning, patient trends, and surgeon analytics." *EOS Insight*, ATEC, https://atecspine.com/eos/ (last accessed Nov. 25, 2025)); and (ii) the REMI Robotic Navigation System, which, Alphatec says, is an "intra-operative platform developed by spine experts with deep navigation and robotics know-how that integrates navigation and robotics into spine procedures utilizing either a 3D imaging scan or 2D fluoroscopic images of the patient." *Press Release: ATEC Acquires Navigation-Enabled Robotics Platform*, ATEC, ATEC - ATEC Acquires Navigation-Enabled Robotics Platform; Raises 2023 Revenue Guidance on Strength of Preliminary First Quarter Revenue Results (last accessed Nov. 25, 2025). Finally, Alphatec has discussed plans to commercialize Valence, which it describes as robotic "positioning and guidance system intended for the spatial positioning and orientation of instrument to guide standard surgical instruments." *Valence Robotic Navigation System*, ATEC, https://atecspine.com/wp-content/uploads/2021/09/INS-171-B-2.pdf (last accessed Nov. 25, 2025).

**In short, Alphatec directly competes with Globus in the market for capital spine surgery equipment—i.e., the same market for which you were responsible at Globus.**

As you know, you served in leadership roles (and ultimately a VP-level role) in Globus's imaging, navigation, and robotics business ("INR"). Globus entrusted you in those roles and gave you invaluable access to Globus's INR customers, resources, and confidential and



trade secret information.  Globus did so in exchange for and in reliance on your promises in the NCNDA.  As a result, you were introduced to and (using Globus's resources) developed relationships with key Globus INR customers, vendors, and partners, and you gained access to confidential and trade secret information about Globus's INR business (including customer information, strategies, product roadmaps, competitive intelligence, contracting information, and pricing information).

I understand that you have told Globus that your role at Alphatec will be limited solely to the sale of Alphatec's EOS system.  Even if that is true—and we have yet to receive written notice from you describing your title and responsibilities, which itself is a breach of the NCNDA (*see* **Ex. A**, NCNDA ¶ 6.1)—we are concerned that your performance of the role will inevitably lead to breaches of your contractual and common law obligations to Globus that will cause irreparable harm to Globus.

You will be selling (or managing individuals who sell to) the same customers and market segment to whom you (or the individuals on your Globus team) sold Globus's INR products.  Those customers will inevitably ask about Alphatec's suite of capital equipment (and spine surgery) products.  And you will undoubtedly be interacting with internal Alphatec personnel who have responsibilities for developing, marketing, and strategizing around Alphatec's suite of capital (and spine surgery) products.

Please, therefore, provide the following by the end of the day on **December 4, 2025**:

i.    A description of your current position, including title, scope of responsibilities, reporting structure, and the product areas with which you are involved;

ii.   A statement as to whether you will have any responsibilities for selling or marketing (or managing or interacting with individuals responsible for selling or marketing) any Alphatec product besides EOS (and, if so, which specific products);

iii.  A description of the guardrails you and Alphatec have installed to ensure that you will not sell or market (or manage or interact with individuals responsible for selling or marketing) any Alphatec product besides EOS;

iv.   Confirmation that you do not possess any Globus Confidential Information (as defined in the NCNDA) and that you have not and will not  directly or indirectly, use or disclose Globus's Confidential Information (as defined in the NCNDA) for any reason; and

v.    Confirmation that you are abiding by the preservation expectation set forth below.



## GLOBUS MEDICAL

While Globus hopes and expects that you will provide the requested assurances and litigation will not be necessary, we expect that you will preserve all materials that are potentially relevant to this dispute, including, but not limited to, documents (e.g., notes, hard-copy papers, emails, text messages, spreadsheets, voicemails iMessages, chats, social media stories/posts/messages/activities, group chats), files, electronically stored information (including, but not limited to, emails, text messages, iMessages, social media posts/messages/activities, and group chats), devices, and websites concerning Globus; Globus's current and former employees; Globus's current and former customers, contractors, vendors, and partners; Globus's product portfolio (both in development and on the market); your recruitment by Alphatec; and your actual and anticipated job duties at Alphatec. If you have any device or system (such as iPhone) set to "autodelete," you should turn that function off immediately so that you are not losing any potentially relevant materials.

While Globus fully anticipates that you will timely and satisfactorily reply to this letter, Globus continues to evaluate legal action and expressly reserves its right to pursue all legal and equitable claims and relief available to it. We look forward to your response.

Sincerely,

Kelly Huller, Esq.
Executive Vice President,
General Counsel



# Exhibit A



# GLOBUS MEDICAL, INC.
# NO COMPETITION AND NON-
# DISCLOSURE AGREEMENT

This No Competition and Non-Disclosure Agreement ("NCND Agreement") is made and entered into between Globus Medical, Inc., its subsidiaries and divisions and affiliates, as well as their respective successors and assigns (collectively the "Company" or "Globus") and __Daniel Powell__ ("Individual," "I" or "me") effective _November 15,2018_ ("Effective Date").

## INTRODUCTION AND ACKNOWLEDGEMENTS

1.1.    I acknowledge and agree that I perform services for and on behalf of the Company, either as a direct employee or through an independent services contract, for which the Company compensates me. I acknowledge and agree that the business in which the Company operates is extremely competitive. I acknowledge and agree that my position with the Company will provide me with access to confidential, proprietary and trade secret information of the Company, including information regarding the Company's products, services, technologies, customers, and sales, the disclosure of which would cause the Company to suffer significant and irreparable harm. I acknowledge and agree that my role in the Company will directly or indirectly support the Company's business, including building and developing relationships with customers and clients, prospective customers and clients, employees and other agents of the Company, furthering the Company's research and development efforts, and creating and expanding the Company's goodwill.

1.2.    I acknowledge and agree that the purpose of this Globus Medical, Inc. No Competition and Non-Disclosure Agreement (the "NCND Agreement") is to protect the legitimate business interests of the various businesses that comprise Globus Medical, Inc.

1.3.    I acknowledge and agree that this NCND Agreement is supported by valuable consideration, that mutual promises and obligations have been undertaken by the parties to it, and that this NCND Agreement is entered into voluntarily by me. I acknowledge and agree that I have the right to consult with legal counsel prior to signing this NCND Agreement. I am voluntarily entering into this NCND Agreement as an express condition of my relationship with the Company, and I acknowledge and agree that the Company would not provide me with access to Confidential Information (defined below) or allow me to interact with its existing customers and clients, prospective customers and clients, employees and other agents of the Company, if I did not agree to be bound by the terms of the NCND Agreement.

1.4.    This NCND Agreement, including the items in Attachment A ("State Law Modifications") shall remain in effect during my relationship with the Company even if my position or job location changes,

1

or I transfer from one Globus company or division to another, and will survive the termination of my relationship with the Company.

## DEFINITIONS

2.1.    **Company** or **Globus** shall be defined as Globus Medical, Inc., its subsidiaries, divisions, and affiliates and their respective successors, assigns, purchasers and acquirers.

2.2.    **Confidential Information** shall be defined as all information not generally known to the public, in spoken, printed, electronic, or any other form, relating directly or indirectly to: research and development activities, data, results, technology, business or financial information, know-how, trade secrets, practices, techniques, methods, strategies, processes, inventions, developments, specifications, formulations, formulae, materials or compositions of matter of any type or kind (patentable or otherwise), software, algorithms, marketing reports, expertise, technology, test data (including clinical, biological, biomechanical, chemical, and biochemical) and other study data and procedures, drawings, product designs, performance, prototypes and technical specifications, pricing, forecasting, bidding and costing policies, sales, operating, recruitment, training and marketing strategies and techniques, compensation, strategic partners, customer, potential customer, distributor and supplier information, nonpublic financial information of the Company, or information belonging to third parties that has been disclosed to Company under an obligation of confidentiality.

2.3.    **Competing Product or Service** shall be defined as any good, product, product lines, technology, machine, invention, service or process, and each and every component thereof, in existence or under development, that competes with, that is planned to compete with or that may in the future compete with, resembles, may be substituted for, may be used in the same or similar fashion, or performs the same or similar function, as any good, product, product lines, technology, machine, invention, service or process, and each and every component thereof, with which I have worked or about which I gained confidential or proprietary knowledge during the last twenty-four months of my relationship with the Company.

2.4.    **Competitive Activity** shall be defined as direct or indirect participation in, performance of services for, employment by, ownership of any interest in, or assistance, promotion or organization of, any Competing Company.

2.5.    **Competing Company** shall be defined as any person, partnership, corporation, firm, limited liability company, association or other business entity, other than Globus, which currently or intends to manufacture, produce, design, research, develop, sell, market, distribute, or consult on a Competing Product or Service. A Competing Company may also be any group purchasing organization, integrated delivery or health network, health system, hospital or medical center.

2.6.    **Relationship** shall be defined as the time period during which the Individual performs services for or on behalf of the Company.

2.7.    **Hospitals** shall be defined as hospitals, surgery centers, medical centers and other health care facilities that purchase Globus products or services and the location at which Medical Personnel perform services related to the purchase, implantation or other handling and usage of the Globus products or

2

services.

2.8.    **Medical Personnel** shall be defined as orthopedic surgeons, neurosurgeons, physicians, nurses and other medical personnel involved in the implantation, purchase or other handling and usage of the Globus products or services, including but not limited to employees, agents or persons who control, direct, manage or influence purchasing decisions of any Hospitals.

2.9.    **NCND Territory** shall be defined as any geographic area assigned to the Individual within the most recent 12 months of the Relationship.  In the event that the Individual has been assigned to certain Hospitals and/or Medical Personnel and not a geographic area within the most recent 12 months of the Relationship, the NCND Territory shall be defined as any Hospitals and/or Medical Personnel to which the Individual, or any individual or entity under the Individual's management or supervision, was assigned to, had responsibility for, solicited, supported, serviced, managed or directed the efforts of others, or was compensated on, within the most recent 12 months of the Relationship.  In the event that the Individual has not been assigned to specific Hospitals and/or Medical Personnel or to a specific geographic region within the most recent 12 months of the Relationship, the NCND Territory shall be defined as worldwide.

2.10.    **No Competition Period** shall be defined as the time period encompassing both the Relationship and the 12-month period immediately after the termination of the Relationship.

### NO COMPETITION & NO SOLICITATION COVENANTS

3.1    **No Competition**.  During the No Competition Period, I will not directly or indirectly participate in, perform services for, be employed by, own any interest in, or otherwise assist a Competing Company in connection with or relating to a Competing Product or Service; provided that the purchase for investment of not more than five (5%) percent of the total capital stock of such Competing Company whose stock is publicly traded shall not constitute a violation of this provision.  I also agree that during the No Competition Period, I will not directly or indirectly participate in, perform services for, be employed by, own any interest in, or otherwise assist a Competing Company in a position similar in responsibilities to any position I held with the Company in the last twenty-four months prior to the termination of the Relationship or in a position where I could use Confidential Information to the detriment of Globus.

If, during the last year of employment with Company, I was engaged exclusively in non-management field sales activities including selling, soliciting the sale or supporting the sale of the Company's products or services through contact with Hospitals or Medical Personnel, then I agree not to directly or indirectly engage in any Competitive Activity with any Hospitals or Medical Personnel during the Relationship.  In addition, I agree not to directly or indirectly engage in any Competitive Activity with any Hospitals or Medical Personal during the No Competition Period in the NCND Territory.

3.2    **No Solicitation of Customers.**  During the No Competition Period, I agree not to directly or indirectly, either for my benefit or the benefit of another individual or entity, solicit, call on, interfere with, attempt to divert, entice away, service, support, sell to or market to any Hospital in the NCND Territory, or to any Medical Personnel in the NCND Territory who performs any services related to a Competing Product or Service (regardless of whether such services are also provided by the Medical

3

10/18

Personnel outside the NCND Territory). By way of example, if a physician performs services at two different Hospitals, one within and one outside the NCND Territory, the restrictions in this paragraph prohibit me from directly or indirectly soliciting, calling on, interfering with, or attempting to divert, entice away, servicing, supporting, selling to, or marketing to the physician at either the Hospital within the NCND Territory or the Hospital outside the NCND Territory.

3.3     **No Solicitation of Company's Agents or Employees**. During the No Competition Period, I agree not to directly or indirectly, either for my benefit or the benefit of another individual or entity, employ or offer to employ in any capacity, solicit, call on, attempt to divert, entice away or recommend for employment or contractual relationship with a Competing Company, any individuals who are or were employees, independent contractors, representatives or employees of the Company or of any of the Company's distributors at any time within the preceding 12 months.

## NON-DISCLOSURE COVENANT AND COMPANY PROPERTY

4.1.    **Use of Confidential Information**. Both during the Relationship and after the termination of the Agreement, I will not for any reason whatsoever (other than to promote and advance the business of the Company), reveal to any person or entity (both commercial and non-commercial) any Confidential Information of the Company.

4.2.    **Disclosure Exceptions.** Nothing in this Agreement shall prohibit or restrict me from lawfully (A) initiating communications directly with, cooperating with, providing information to, causing information to be provided to, or otherwise assisting in an investigation by any governmental or regulatory agency, entity, or official(s) (collectively, "Governmental Authorities") regarding a possible violation of any law; (B) responding to any inquiry or legal process directed to me individually (and not directed to the Company and/or its subsidiaries) from any such Governmental Authorities; (C) testifying, participating or otherwise assisting in an action or proceeding by any such Governmental Authorities relating to a possible violation of law; or (D) making any other disclosures that are protected under the whistleblower provisions of any applicable law. Additionally, pursuant to the federal Defend Trade Secrets Act of 2016, I shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to my attorney in relation to a lawsuit for retaliation against me for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Nor does this Agreement require me to obtain prior authorization from the Company before engaging in any conduct described in this paragraph, or to notify the Company that I have engaged in any such conduct.

4.3.    **Development of Intellectual Property**. I may make, discover or develop inventions, modifications, improvements, ideas, concepts, trade secrets, financial materials, systems, programs, discoveries, know-how, processes, methods and devices, whether patentable or not, related to or used in the conduct of my performance of services for and on behalf of the Company ("Developments"). I agree to disclose fully and promptly to the Company any said Developments. Furthermore, I agree that the Company is the sole and exclusive owner of said Developments; I retain no ownership in said Developments; and said Developments become part of the Company's Confidential Information for purposes of this NCND Agreement. I agree to assign and hereby assign my entire right, title and interest

4

in all Developments (including but not limited to all patents and patent applications and priority rights) to Company or its designee. I and Globus agree that if the Developments or any portion thereof are copyrightable, it shall be deemed "work for hire" as such term is defined in the U.S. Copyright Act. I shall execute and deliver to the Company any and all licenses, applications, assignments and other documents and take any and all actions that the Company may deem necessary or desirable to protect Company's ownership rights in said Developments.

4.4.    **Sale of Company Property**. I will not sell, give away or trade for my own benefit or the benefit of another individual or entity other than Globus, any items that are the property of Globus. Globus property includes, but is not limited to, samples, inventory, customer trade-ins, training materials, promotional materials, customer and prospect lists, pricing information, product lists, software manuals, technical data, forecasts, budgets, notes, customer information, employee information, employee names, phone lists, organizational charts, product information and/or Confidential Information.

4.5.    **Handling and Return of Confidential Information and Company Property**. I shall not physically or electronically remove or make copies of any Confidential Information owned by the Company, except as required by me to properly fulfill my responsibilities to, and permitted by, the Company. Upon the termination of the Relationship, I shall immediately return to the Company any and all Company property and Confidential Information in my possession, including any and all copies of Company property and Confidential Information.

4.6.    **Fiduciary Duties**. I agree that I shall treat all Confidential Information entrusted to me by the Company as a fiduciary, and I accept and undertake all the obligations of a fiduciary, including good faith, loyalty, trust, confidence and candor, and to maintain, protect and develop Confidential Information for the benefit of the Company.

4.7.    **Confidential Information of Others**. I hereby represent and warrant to the Company that I am not bound by any agreement, understanding or restriction, (including, but not limited to any covenant restricting competition or agreement related to the confidential and proprietary information and trade secrets of any third party), that is inconsistent with or prevents or limits my ability to fulfill my obligations under the Agreement. Furthermore, I hereby represent and warrant to the Company that the execution and performance of the Agreement will not result in or constitute a breach of any term or condition of any other agreement to which I am bound. In performance of my duties and obligations under the Agreement, I agree not to disclose the confidential and proprietary information or trade secrets of any third party to the Company.

**REMEDIES**

5.1.    **Right to Specific Relief**. The Company and the Individual recognize and acknowledge that the limitations set forth in this NCND Agreement are properly required for the adequate protection of the business of the Company, and that violation of any of the provisions of this NCND Agreement will cause irreparable injury for which money damages are neither adequate nor ascertainable. Accordingly, the Company shall have the right to have the provisions of this NCND Agreement specifically enforced, in addition to any other remedies which the Company may have in equity or at law, and the Individual hereby consents to the entry of an injunction or other similar relief without the necessity of posting a bond or other financial insurance. Furthermore, the Company shall be entitled to recover its costs and

5

expenses (including reasonable attorneys' fees) incurred in enforcing its rights under this NCND Agreement.

If a dispute arises under this NCND Agreement, the Individual shall have a duty to immediately notify the Company of the name, address and telephone number of the Individual's legal counsel. In the event the Individual fails to provide this information, the Individual agrees that the Company may seek a temporary restraining order to enforce the provisions of this NCND Agreement on an ex parte basis. The Individual acknowledges that the Company's recovery of damages will not be an adequate means to redress a breach of this NCND Agreement. Nothing contained in this paragraph, however, shall prohibit the Company from pursuing any remedies in addition to injunctive relief, including recovery of damages.

5.2.    **Right to Recover Attorneys' Fees and Costs**. If the Company seeks a restraining order, an injunction or any other form of equitable relief, and recovers any such relief, the Company shall be entitled to recover its reasonable attorneys' fees, court costs, and other costs incurred obtaining that relief (even if other relief sought is denied). If the Company obtains a final judgment of a court of competent jurisdiction, pursuant to which the Individual is determined to have breached his/her obligations under this Agreement, the Company shall be entitled to recover, in addition to any award of damages, its reasonable attorneys' fees, costs, and expenses incurred by the Company in obtaining such judgment. The parties agree that the provisions of this paragraph are reasonable and necessary.

## OTHER MATTERS

6.1.    **Condition to Seeking Subsequent Employment**. To assist Globus with monitoring compliance with this NCND Agreement, I agree, during the No Competition Period, to notify Globus in writing prior to commencing employment with a Competing Company of the identity of the Competing Company and my job title and responsibilities. I also agree to show a copy of this NCND Agreement to any Competing Company with whom I interview during the Relationship or with whom I interview within the 12-month period immediately following the termination of the Relationship.

6.2.    **Entire Agreement**. This NCND Agreement, including its Attachment A "State Law Modifications", constitutes the entire agreement between the parties relating to the specific matters covered by this NCND Agreement and supersedes all prior agreements, whether written or oral. No modifications or waiver of any part of this NCND Agreement shall be binding upon either party unless in writing and signed by me and the Globus Vice President, Associate General Counsel or her designee.

6.3.    **Waiver**. The waiver of a breach of any provision of this NCND Agreement by any party shall not operate or be construed as a waiver of any provision of this NCND Agreement or consent of any subsequent breach.

6.4.    **Severability**. If any term or provision of this NCND Agreement shall be determined invalid or unenforceable to any extent or in any application, then the remainder of this NCND Agreement shall not be affected thereby, and such term or provision shall be deemed modified to the minimum extent necessary to make it consistent with applicable law, except to such extent or in such application, shall not be affected thereby, every term and provision of this NCND Agreement as so modified if necessary, shall be enforced to the fullest extent and in the broadest application permitted by law. In the event

6

reformation is not allowed by law, then the invalidity or unenforceability of any particular provision of this NCND Agreement shall not affect any other provisions, and this NCND Agreement shall be construed in all respects as if the invalid provision had been severed or omitted from this NCND Agreement.

6.5.   **Governing Law and Forum**.   Unless I am a resident of and work in one of the states included in Attachment A "State Law Modifications," I agree and consent that this NCND Agreement shall be enforced as a contract of the Commonwealth of Pennsylvania because Globus's operational and worldwide headquarters are located in Pennsylvania.  I agree that the validity, enforceability, construction and interpretation of this NCND Agreement shall be governed by the laws of the Commonwealth of Pennsylvania, without regard to its conflict of law rules.  I also agree and consent that any and all litigation between Globus and me relating to this NCND Agreement will take place exclusively in the Commonwealth of Pennsylvania, and I consent to the jurisdiction and venue of the federal and/or state courts in the Commonwealth of Pennsylvania.  I also consent to service of process by electronic mail, United States Mail or express courier in any such action.

6.6.   **Transfer or Assignment; Binding Nature**.   The Company may transfer or assign its rights and obligations pursuant to this NCND Agreement to its successors or assigns, and I hereby consent and agree to this assignment.  The Individual shall not assign any of his or her rights or delegate any of his or her duties or obligations under this NCND Agreement.  This NCND Agreement shall be binding upon and inure to the benefit of the parties hereto and to the Company's successors and assigns.

6.7.   **Tolling**.   I understand and agree that in the event of any breach of my obligations under paragraphs 3.1 or 3.2 of this NCND Agreement, the No Competition Period shall be automatically tolled for the amount of time the violation continues.

IN WITNESS WHEREOF, the undersigned have executed this NCND AGREEMENT, intending to be bound under their seals, effective as of the day and year set forth above.

**COMPANY:**                          **INDIVIDUAL:**

By: _____   By: _____

7

10/18

## ATTACHMENT A

The purpose of this Attachment A to the NCND Agreement is to modify certain terms of this Agreement as described below. For the purpose of this NCND Agreement, the Individual is a resident of and works in only one state any at any given time.

## THE INDIVIDUAL IS A RESIDENT OF AND WORKS IN CALIFORNIA

The following Sections are amended and restated as below.

Sections 3.1 & 3.2 are amended and restated as follows: The no competition and customer non-solicitation restriction will not apply to Individuals who work and reside in California when the Relationship terminates and who continue to work and reside in California during the post-Relationship time period of the No Competition Period.

6.5.    **Governing Law**. In order to maintain uniformity in the interpretation of this NCND Agreement the parties have expressly agreed that this NCND Agreement, the parties' performance hereunder and the relationship between them shall be governed by, construed and enforced in accordance with the laws of the State of California, without regard to the principles thereof regarding conflicts of laws.

6.5.    **Governing Law**. In order to maintain uniformity in the interpretation of this NCND Agreement the parties have expressly agreed that this NCND Agreement, the parties' performance hereunder and the relationship between them shall be governed by, construed and enforced in accordance with the laws of the State of Louisiana, without regard to the principles thereof regarding conflicts of laws.

## THE INDIVIDUAL IS A RESIDENT OF AND WORKS IN MASSACHUSETTS

The following Sections 3.4 & 3.5 are added.

3.4    **Post-Termination Compensation**. In exchange for the restriction in Section 3.1, the Company will compensate the Individual during the No Competition Period by paying the Individual a total of 50 percent of the Individual's highest annualized base salary paid by the Company within the 2 years preceding the termination of the Relationship (the "Payments"). The Payments will be pro rata and paid on a monthly basis in accordance with the Company's payroll practices.

3.5    **Right to Waive Payments; Enforceability**. The Company shall have no obligation to make any Payments provided in Section 3.5 if: (1) I breach this NCND Agreement or my fiduciary duties to the Company, in which case Company shall have no obligation to make Payments, but shall be entitled to enforce the NCND Agreement; (2) within ten days after termination of the Relationship, Globus, in its sole and unreviewable discretion, provides a waiver of its right to enforce Section 3.1; or (3) within ten days of making a payment under Section 3.5, Globus, in is sole and unreviewable discretion, waives its right to enforce Section 3.1. for the remaining No Competition Period. Such waivers shall be in writing and signed by Globus Vice President, Associate General Counsel or her designee.

The following Sections are amended and restated as below.

8

6.5.    **Governing Law**.  In order to maintain uniformity in the interpretation of this NCND Agreement the parties have expressly agreed that this NCND Agreement, the parties' performance hereunder and the relationship between them shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts, without regard to the principles thereof regarding conflicts of laws.

9

10/18