**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLOBUS MEDICAL, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:26-cv-02245 (MKC)** |
| | ) | |
| **DAN POWELL,** | ) | |
| | ) | |
| **Defendant** | ) | |

**PLAINTIFF GLOBUS MEDICAL, INC.'S MEMORANDUM OF**
**LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Through its counsel of record, and pursuant to Federal Rule of Civil Procedure 65, Plaintiff, Globus Medical, Inc. ("Globus"), respectfully requests that this Court enter a preliminary injunction requiring that Defendant, Dan Powell ("Powell"), maintain the confidentiality of all Globus' confidential information entrusted to him during his employment, return all Globus documents and/or materials – some of which are confidential and/or proprietary – that are in his possession, and submit to a neutral, third-party forensic examination of his electronic devices that he admits housed Globus's materials. In support of this request, Globus states:

## I.    INTRODUCTION

Globus has a simple ask of this Court – enter an injunction requiring the search of Defendant's electronic devices for Globus' materials and ordering the return of those materials including, without limitation, those that contain Globus' confidential and proprietary information. Absent the issuance of an injunction granting this relief, Defendant, who now works for Alphatec Spine, Inc. ("Alphatec"), which is one of Globus' direct competitors, will be able to utilize the Globus materials he downloaded in the last days of his Globus employment, including those that contain Globus' confidential and proprietary information, to compete against it in the highly

1

competitive spine industry. To be clear, at this time Globus does not seek to keep Defendant from working in his current position with Alphatec. It simply wants him to return its proprietary materials.

## II.    RELEVANT FACTS

### A.    The Parties.

Globus is a leader in the medical device industry with products that treat spinal and orthopedic diseases. (Compl., Doc. 1, ¶ 8).[1] Globus employed Defendant from November 2018 through November 21, 2025, most recently as an Area Vice President in Globus' Imaging, Navigation, and Robotics (commonly referred to as "Capital Equipment") division.[2] (Id. at ¶ 4). Globus' INR division offers innovative and market-leading products, such as ExcelsiusGPS™ ("EGPS"), which is the world's first (and only) surgical navigation robot that offers a comprehensive approach to both spine and cranial procedures, from start to finish.[3] (Id. at ¶ 16). Additionally, Excelsius3D™ ("E3D") is Globus' intelligent imaging system, which offers x-ray, fluoroscopy, and 3D imaging all in one comprehensive – and mobile – system.[4] (Id.).

In his role as an Area Vice President in Globus' INR division, Defendant reported directly to Globus' INR worldwide sales leader. (Id. at ¶ 18). A team consisting of a Zone Director and multiple Regional Sales Managers ("RSMs") reported to Defendant, and he was ultimately responsible for the marketing and sale of Globus' Capital Equipment (i.e., EGPS, E3D, etc.) for the western half of the United States. (Id.). Defendant was also responsible for Globus's Capital

---

[1] Globus attaches the Declarations of Jeremy Zivitz as **Exhibit 1** and Micah Schmitt as **Exhibit 2**, who verify the accuracy of the Complaint allegations relevant to its request for preliminary injunction.

[2] Globus colloquially refers to its Imaging, Navigation, and Robotics division as "INR."

[3] EGPS's revolutionary capabilities are detailed on Globus' website. Globus Medical, Inc., https://www.globusmedical.com/musculoskeletal-solutions/excelsiustechnology/excelsiusgps/ (last accessed April 2, 2026).

[4] Detailed on Globus' website. Globus Medical, Inc., https://www.globusmedical.com/musculoskeletal-solutions/excelsiustechnology/excelsius3d/ (last accessed April 2, 2026).

Equipment business in Australia and the entirety of Latin America. (Id.). As Area Vice President, it was Defendant's job to develop sales channels and negotiate purchase agreements by cultivating relationships with hospitals and medical centers, through regularly interacting with key physician champions of the technology and C-suite level representatives of these medical facilities as the purchase of Capital Equipment is a significant (and oftentimes ongoing) financial commitment. (Id.).

Defendant now serves as Alphatec's Vice President of U.S. Sales, EOS Capital, Inc. (Id. at ¶ 4). Until recently, Alphatec was not a player in the INR market as it had no viable offerings in the space. (Id. at ¶ 17). That changed with its recent acquisition and commercialization of its EOS Insight™ ("EOS") imaging platform and its Valence® Robotic Navigation System ("Valence"). Valence and EOS compete with EGPS and E3D. (Id.).

B.    **Defendant's NCNDA with Globus.**

As a condition of his employment with Globus, Defendant agreed to and executed a November 15, 2018, No Competition and Non-Disclosure Agreement ("NCNDA"), which, among other things:

- obligates Defendant to hold Globus' Confidential Information[5] in the strictest of confidence and use it only to carry out his responsibilities to Globus;
- imposes certain fiduciary obligations with respect to the Confidential Information; and
- requires Defendant to return all Globus material, including those that contain Confidential Information, at the end of his Globus employment.

---

[5] The NCNDA defines "Confidential Information" as: "[A]ll information not generally known to the public, in spoken, printed, electronic, or any other form, relating directly or indirectly to: research and development activities, data, results, technology, business or financial information, know-how, trade secrets, practices, techniques, methods, strategies, processes, inventions, developments, specifications, formulations, formulae, materials or compositions of matter of any type or kind (patentable or otherwise), software, algorithms, marketing reports, expertise, technology, test data (including clinical, biological, biomechanical, chemical, and biochemical) and other study data and procedures, drawings, product designs, performance, prototypes and technical specifications, pricing, forecasting, bidding and costing policies, sales, operating, recruitment, training and marketing strategies and techniques, compensation, strategic partners, customer, potential customer, distributor and supplier information, nonpublic financial information of the Company, or information belonging to third parties that has been disclosed to Company under an obligation of confidentiality. (Compl., Doc. 1, at ¶ 10).

3

(Id. at ¶¶ 11–12).  Defendant expressly agreed that the scope of these obligations is reasonable and necessary to protect Globus's confidential and proprietary information and that any violation of the NCNDA could result in irreparable harm to Globus – the amount of which would be difficult to estimate – making money damages inadequate.  (Id. at ¶ 13).  Accordingly, Defendant agreed that Globus has the right to petition this Court for injunctive relief restraining his breach of the NCNDA.  (Id.).

### C.    **Defendant downloaded Globus' materials, including some with Confidential Information, to his personal device.**

In May of 2025, six months before resigning from Globus, Defendant returned certain laptop computers Globus issued to him and began utilizing his personal devices to conduct business.[6]  (Id.).  Between September 1 and November 18, 2025, Defendant connected a personal electronic device to Globus' Microsoft 365 Exchange Online, which is part of a cloud-based productivity suite with office applications and collaboration tools, on multiple occasions to access and save Globus' files (the "Downloaded Files") to his personal device.  (Id. at ¶ 21).

Without access to Defendant's personal device(s), Globus cannot state exactly what Defendant downloaded.  (Id. at ¶ 22).  That said, Globus can definitively determine that Defendant downloaded numerous files, and the names of several of the Downloaded Files strongly indicate (if not conclusively prove) that they contain Globus' Confidential Information about its Capital Equipment business.  (Id.).  Indeed, some of the Downloaded Files contain the following words and/or phrases:

---

[6] Defendant did not disclose that he intended to utilize his personal computer for Globus business, instead framing the return of the devices as "a few old laptops" he found because he was moving. (Compl., Doc. 1, ¶ 19).  At all times relevant to this dispute, Globus' policies and procedures prohibited its employees from primarily utilizing their own devices for their Globus work without explicit permission. (Id. at ¶ 20).  Defendant did not request such permission from his direct manager, Micah Schmitt, and Globus has no evidence that Powell requested or received this explicit permission. (Id.).

- West Zone Pipeline 2025;
- RSM Vision Presentation;
- Microsoft Teams Chat Files;
- Excelsius Ecosystem _Vision Presentation;
- 2025 Ramsay Capital Proposal;
- Q3 PR RSM Dani Thayer;
- Excelsius Arrays and New Instruments Guide;
- ExcelsiusGPS E3D Pre-Installation Checklist
- Strategy/QCR Slides;
- CA-NV-HI Business Plan 2025_Hayes;
- CA-NV-HI Business Plan 2025 Ross;
- UCSD East Campus RPF;
- Pipeline;
- Hawaii Business Planning;
- California-Hawaii Business Planning 2025;
- 2024 California Planning;
- Jays Pipeline;
- 2023 Central Plan;
- Keith Pfeil Pipeline;
- Revenue Tracker;
- Finance Alignment;
- 2024 Nebraska Plan;
- Copy of Top Accounts; and
- CEO Proposal.

(Id.).  The term "pipeline" appears in many of the Downloaded Files' file names, often in the context of various "pipeline trackers."  (Id. at ¶ 23).  The importance of Globus' pipeline trackers cannot be overstated.  (Id.).  Essentially, Globus tracks its entire worldwide INR business, from prospects all the way through completed sales, via pipeline trackers, which are Excel spreadsheets containing all the necessary information to solicit, market, and ultimately close sales of INR Capital Equipment including customer identity, product needs and specifications, status of sales process (i.e., target, prospect, sale in progress, sale completed), and any/all other actionable information regarding all customers within a particular geography. (Id.). Access to Globus' master INR pipeline tracker was limited solely to Defendant and four others during his tenure as Area

5

Vice President. Put simply, Globus' pipeline trackers are some of its most secret and safeguarded Confidential Information, which are highly valuable to any competitor in the INR market. (Id.).

The term "plan" appears in many of the Downloaded Files' file names.  (Id. at ¶ 24).  As these file names also contain location descriptors, they contain sales strategies for its Capital Equipment in various regions and information specific to potential and actual Globus customers in those regions including, without limitation, sales volumes, potential product needs, etc., all of which qualify as Confidential Information. (Id.).

As detailed above, "Excelsius" is the name of Globus' entire ecosystem of exceptional technology designed to improve safety and care in the OR for patients and hospital staff alike including, its robotics, imaging, extended reality, and navigation systems, which it developed over thirteen years of engineering and financial investment.  (Id. at ¶ 25).  Several of the Downloaded Files contain the name "Excelsius."  (Id.).  Globus' confidential internal documents and materials related to training on and the marketing, competitive positioning, and sale of its Excelsius suite of products would be extremely useful to a company like Defendant's new employer that is launching any competitive INR platform.  (Id.).  By way of example only, two of the Downloaded Files— which Defendant downloaded three days prior to resigning—are entitled "EGPS_vs_Velys_Handout 1.docx" and "ExcelsiusGPS E3D Pre-Installation Checklist.docx." (Id.). The former document is internal market research compiled by Globus comparing the capabilities of its EGPS navigation system against a competitive system offered by Depuy Synthes, and the latter is Globus' step-by-step guide of actions to complete to ensure the efficient and seamless installation of Globus' EGPS and E3D platforms after a medical facility completes a purchase of Capital Equipment.  (Id.).

Another file Defendant downloaded prior to his resignation is entitled, "ExcelsiusArrays and New Instruments Guide.pptx." (Id. at ¶ 26.). This PowerPoint deck is an internal training tool that details all the newly released navigated instrumentation for use with, among other platforms, Globus' EGPS system and contains detailed pricing and product information. (Id.).

**D.**     **Defendant's resignation from Globus and employment with a competitor.**

On Friday, November 21, 2025, a mere three days after Defendant accessed the last of the Downloaded Files, Defendant resigned from his employment with Globus and informed it that he accepted a position with Alphatec's Capital Equipment division, focusing on its EOS imaging platform. (Id. at ¶ 28). At the time he accepted this employment, Alphatec's Capital Equipment offerings were not as robust as Globus'. (Id.). However, Alphatec recently launched a surgical robot navigation system (i.e., Valence) that competes with Globus' Excelsius robot. (Id.).

On Monday, November 24, 2025, Defendant commenced his employment with Alphatec without having notified Globus of such employment in writing of his job responsibilities as required by Section 6.1 of the NCNDA. (Id. at ¶ 29). In his new role as Alphatec's Vice President of US Sales, EOS Capital, Defendant leads all sales of Alphatec's imaging Capital Equipment, including EOS, to many of the same U.S. based customers for whom he was responsible during his Globus tenure. (Id. at ¶ 30).

**E.**     **Defendant's refusal to return Globus' property.**

Shortly after Defendant resigned his employment and commenced working for Alphatec, Globus discovered both Defendant's activity in accessing and downloading the Downloaded Files and his unauthorized use of personal devices to conduct his Globus business in (at least) the last six months of his employment. (Compl., Doc.1, at ¶ 31). Globus also discovered that he utilized a personal, non-Globus email account to conduct business on its behalf. (Id. at ¶ 32). Defendant

never asked permission to utilize a personal email address to conduct business. (Id.). Indeed, Globus would not consent to such a request because, among other reasons, it has no way to ensure the proper safeguarding of its Confidential Information. (Id.).

Since that time, Globus made multiple demands to Defendant (directly and through Alphatec's inside counsel who has stated that she is representing him) for the return of its Confidential Information and for the ability to confirm their return/destruction via a neutral, third-party forensic examination of Defendant's personal electronic devices(s) and email account(s) that he utilized to conduct Globus business. (Id. at ¶ 33). Defendant (directly and through Alphatec's inhouse counsel) refused, and is refusing, Globus' demands, necessitating this litigation. (Id.).

### III.    STANDARD FOR ISSUING A PRELIMINARY INJUNCTION

District courts determining whether to grant a request for preliminary injunction under Federal Rule of Civil Procedure 65 weigh four factors:

- whether the movant has shown a reasonable probability of success on the merits;
- whether the movant will be irreparably injured by the denial of the relief;
- whether granting the preliminary relief will result in even greater harm to the nonmoving party; and
- whether granting preliminary relief is in the public interest.

*Greir v. Cavalari*, No. 25-cv-3855-JMY, 2025 U.S. Dist. LEXIS 202117, at *4 (E.D. Pa. Oct. 14, 2025) (citing *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3rd Cir. 1994)). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction [or a temporary restraining order] is inappropriate." *Id.* (citing P.C. *Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005)). As Globus meets this burden in this case, the Court should issue the requested preliminary injunction.

## IV.    <u>ARGUMENT</u>

Here, Globus satisfies these elements.  Accordingly, the Court should issue a preliminary injunction which precludes Defendant from violating the NCNDA's confidentiality provision.

**A.    <u>There is a High Likelihood that Globus will Prevail on the Merits of this Case</u>**

First, there is a high likelihood that Globus will prevail on the merits of this simple breach of contract case.  "To establish a likelihood of success on the merits, the movant must 'demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)[.]'" *Copperleaf Food Grp. v. Wal-Mart Real Estate Bus. Trust*, No. 2:25-CV-00988-CCW, 2026 U.S. Dist. LEXIS 24821, at *6 (W.D. Pa. Feb. 6, 2026) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)).  That is, "the movant must produce sufficient evidence to satisfy the essential elements of the underlying cause of action." *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 37 (M.D. Pa. 2025) (citing *Punnett v. Carter,* 621 F.2d 578, 582-83 (3d Cir. 1980)).

**1.    The NCNDA meets Pennsylvania's general contract requirements.**

Defendant cannot dispute that the NCNDA meets Pennsylvania's general contract requirements of mutual assent, sufficiently defined terms, and consideration.  *Bastin Truck Parts v. E. Deer Twp.*, No. 24-1538, 2025 U.S. Dist. LEXIS 173085, at *14 (W.D. Pa. Sept. 5, 2025) ("A parties' contract shall be considered valid and binding if all three elements exist.").  As to mutual assent, Defendant agreed to and signed the NCNDA on November 15, 2018.  (Compl., Doc. 1, Ex. 2).  Section 4 of the NCNDA clearly defines Defendant's obligations during and after his employment with respect to Globus' property and confidential information, including his obligation to return all of Globus' property in his possession.  (Id. at ¶¶ 11-13).  Finally, Defendant's engagement by Globus is sufficient consideration to support a valid contract under

Pennsylvania law. *See, e.g.*, *Asset Plan. Servs., Ltd. v. Halvorsen*, No. 21-2021, 2022 U.S. Dist. LEXIS 68073, at *13 (E.D. Pa. Apr. 13, 2022) (quoting *Socko v. Mid-Atlantic Sys. of CPA, Inc.*, 126 A.3d 1266, 1275 (Pa. 2015)); *Jacobson & Co. v. International Environ. Corp.*, 235 A.2d 612, 618 (Pa. 1967) (where covenant is incident to taking of employment, valid consideration is found in the form of the employment itself).

In sum, Defendant assented to the NCNDA at the commencement of his Globus employment, which has definite terms and is support by consideration. Accordingly, it is a valid contract under Pennsylvania law.

### 2.   Defendant breached the NCNDA by refusing to return Globus' property.

Globus will ultimately succeed on its breach of contract claim against Defendant. To that end, the NCNDA specifically requires Plaintiff to return all of Globus' materials – not just those that are confidential and/or proprietary – after resigning from Globus. However, Defendant, with his new employer's consent and encouragement, refuses to do so. Courts in Pennsylvania routinely enforce contractual obligations of this nature. *See, e.g.*, *Synthes, Inc. v. Emerge Medical, Inc.*, 25 F. Supp. 3d 617, 703–704 (E.D. Pa. 2014) (granting summary judgment to plaintiff as to a return-of-property provision even though former employee's retention of emails was "inadvertent").

### B.   Globus will Suffer Irreparable Harm Absent Injunctive Relief

Failure to issue the requested injunction will irreparably harm Globus. To establish irreparable harm, the movant must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Copperleaf Food Grp. v. Wal-Mart Real Estate Bus. Trust*, No. 2:25-CV-00988-CCW, 2026 U.S. Dist. LEXIS 24821, at *6 (W.D. Pa. Feb. 6, 2026) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)). Indeed, by agreeing to Section 5.1 of NCNDA, Defendant concedes that his violations of the NCNDA will result in irreparable

harm to Globus, which this Court defines as "a potential harm that 'cannot be redressed by a legal or an equitable remedy following a trial.'" *Id.* (citing *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 610 (3d Cir. 2024)); *see also Nat'l Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998) ("Harm is irreparable when it cannot be adequately compensated in damages, either because of the nature of the right that is injured, or because there exists no certain pecuniary standards for the measurement of damages."). While not dispositive of the issue, contractual provisions such as this constitute evidence of irreparable harm. *See Dice v. Clinicorp., Inc.*, 887 F. Supp. 803, 810 (W.D. Pa. 1995); *see also York Grp., Inc. v. Yorktowne Caskets, Inc.*, 924 A.2d 1234, 1243 (Pa. Super. Ct. 2007) (finding irreparable harm sufficient to support  preliminary injunctive relief based, in part, on parties' agreement as to the existence of same*); Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 479 (E.D. Pa. 2007) (holding moving party will likely suffer irreparable harm based in part on a stipulation in the restrictive covenant that "in the event of a breach or threatened breach . . . of the restrictive covenant . . . Quaker will suffer irreparable harm, and monetary damages may not be an adequate remedy.")

Irrespective of the NCNDA's language, Defendant's retention of Globus' Confidential Information while working for a competitor in Alphatec presents the likelihood, if not certainty, that irreparable harm will result absent injunctive relief. *See Hudson Global Res. Holdings, Inc. v. Hill*, No. 02:07-cv-0132, 2007 U.S. Dist. LEXIS 38326, at *26–27 (W. D. Pa. May 25, 2007) (finding irreparable harm where former employee downloaded and retained confidential information even though former employee had not accessed or transferred the information since downloading it); *see also Synthes USA Sales, LLC v. Harrison*, 38 Pa. D. & C. 5th 278, 307 (Pa. Ct. Com. Pl. 2014) ("Irreparable harm is likely to result when an employee resigns to work for a competitor, carrying with him the employer's goodwill, customer relationships, and confidential

information."). Indeed, Pennsylvania courts hold a defendant's retention of confidential or proprietary documents after resigning shows an intent to use those trade secrets during its new employment. *Bimbo Bakeries USA, Inc. v. Botticella*, No. 10-0194, 2010 U.S. Dist. LEXIS 68990, at *37 (E.D. Pa. Feb. 9, 2010) ("[C]opying Bimbo's trade secret information from [defendant's] work laptop onto external storage devices demonstrates an intention to use Bimbo trade secrets during [defendant's] intended employment with [new employer]"). Defendant's continued refusal to return Globus' Confidential Information supports an inference that he intends to use it at Alphatec. *Id*. at *38 ("[t]he fact that one of the external devices onto which Defendant copied Bimbo's trade secret information has not been recovered or returned to Bimbo, supports the inference that Defendant intends to use those trade secrets at [new employer]").

Further, the nature of the Confidential Information in the Downloaded Files supports a finding of irreparable harm. *See Stream Cos. v. Windward*, No. 12-CV-4549, 2013 U.S. Dist. LEXIS 202324, at *41 (E.D. Pa. Feb. 8, 2013) (considering the "nature of the misappropriated trade secrets" as indicative of irreparable harm.) For example, the term "pipeline" appears in many of the Downloaded Files' file names, often in the context of "pipeline trackers." (Compl., Doc. 1, ¶ 23). Globus tracks its entire worldwide INR business, from prospects all the way through completed sales, via pipeline trackers, which are Excel spreadsheets containing all the necessary information to solicit, market, and ultimately close sales of INR Capital Equipment including customer identity, product needs and specifications, status of sales process (i.e., target, prospect, sale in progress, sale completed), and any/all other actionable information regarding all customers within a particular geography. (Id. at ¶ 23). Access to Globus' master INR pipeline tracker was limited solely to Defendant and four others during his tenure as Area Vice President. (Id.). The importance of Globus' pipeline trackers, which are some of its most secret and safeguarded

Confidential Information, cannot be overstated. The value to a competitor in the INR market of the pipeline trackers as well as the other Downloaded Files detailed above is evident. Defendant's continued possession of the Downloaded Files in violation of the NCNDA will cause irreparable harm to Globus if the Court does not grant the requested preliminary injunction.

### C.    Defendant Will Suffer No Harm If A Preliminary Injunction Issues

Defendant will suffer no harm, much less irreparable harm, if he is required to return Globus' property that does not belong to him. *See Cerro Fabricated Prods., LLC v. Solanick*, No. 3:17-CV-02422, 2018 U.S. Dist. LEXIS 39258, at \*51-52 (M.D. Pa. Mar. 9, 2018) (holding former employee suffered no harm from injunction barring disclosure of trade secrets, and that any alleged harm was outweighed by harm employer would suffer). Indeed, Defendant cannot now complain of harm should an injunction issue as it was his procurement of the Downloaded Files, and refusal to submit to routine forensic examination of his electronic devices, that necessitates injunctive relief. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (party "can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself").

Conversely, the harm Globus will suffer if the injunction does not issue is evident and substantial. "In balancing the equities, '[t]he question is whether, and to what extent[,] . . . the defendants will suffer irreparable harm if the preliminary injunction is issued.'" *BioTraceIT Corp. v. Dullen*, No. 25-4444, 2025 U.S. Dist. LEXIS 218212, at \*18 (E.D. Pa. Nov. 5, 2025) (citing *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004)).

### D.    Enforcing The Agreement's Covenants Advances The Public Interest

Requiring Defendant to return Globus' property and comply with the confidentiality obligations imposed by the NCNDA will further the public's interest in seeing property rights

respected and valid contracts enforced.  "Where the movant 'demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor' the movant."  *Id.* (citing *AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). Indeed, "[t]he public has a strong interest in enforcing valid contracts and in protecting trade secrets and other confidential information." *Leedsworld, Inc. v. Hare*, No. 2:25-cv-00220, 2025 U.S. Dist. LEXIS 52198, at *37 (W.D. Pa. Mar. 21, 2025) (citing *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010)). Due to the presence of these strong, well-settled, public interests, and the absence of any countervailing issue of public import, this factor weighs heavily in favor of granting Globus's requested injunctive relief.

## V.    RELIEF REQUESTED

Globus has shown that it is entitled to a preliminary injunction requiring Defendant to comply with the obligations imposed upon him – and to which he agreed – by the NCNDA because all the relevant factors weigh heavily in its favor.  Accordingly, Globus respectfully requests that the Court order Defendant to, without limitation:

1. maintain the confidentiality of Globus's Confidential Information that was entrusted to him during his employment;
2. have a third-party forensic examiner examine Defendant's MacBook and other electronic devices and email accounts to identify and remove Globus' information from those devices and accounts and ensure such information was not transferred to another electronic device; and
3. return all Globus documents, papers or other materials in his possession or under his control and all documents, papers or other materials in his possession or under his control which may contain or be derived from Globus' Confidential Information.

Additionally, Globus respectfully requests that the Court grant any other relief that it deems just and proper.

Respectfully submitted,

**BURNS WHITE LLC**

Date: April 8, 2026

*//s//* William J. Clements
William J. Clements
Pa. Atty. I.D. No. 86348
1001 Conshohocken State Road
Suite 1-515
West Conshohocken, PA  19428
(484) 567-5656 (Telephone)
(484) 567-5701 (Facsimile)
wjclements@burnswhite.com

Christopher W. Cardwell, Esq. (TN Bar #19751)
(*Pro Hac Vice Forthcoming*)
Mary Taylor Gallagher, Esq. (TN Bar #21482)
(*Pro Hac Vice Forthcoming*)
M. Thomas McFarland, Esq. (TN Bar #033432)
(*Pro Hac Vice Forthcoming*)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff, Globus Medical Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system. The party or parties served are as follows:

Dan Powell
6956 E. Nichols Avenue
Denver, Colorado 80112
dan@gritandarrow.com

*Defendant*

*//s//* William J. Clements